[Cite as *State v. Lynch*, 2026-Ohio-2977.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2025-08-075 |
| Appellee, | : | |
| | | <u>OPINION AND</u> |
| vs. | : | <u>JUDGMENT ENTRY</u> |
| | | 8/3/2026 |
| ANTHONY LYNCH, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM WARREN COUNTY MUNICIPAL COURT
Case No. 2025CRB000013

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellant.

**O P I N I O N**

**M. POWELL, J.**

{¶ 1} Anthony Lynch appeals his conviction for resisting arrest. Finding no error, we affirm.

## I. Factual and Procedural Background

{¶ 2}   On the afternoon of January 7, 2025, Lynch drove a white box truck to the South Lebanon post of the Warren County Sheriff's Office to take part in a custody exchange of his son. He arrived first and parked along the street. Because snow blocked the passenger side of the truck, he moved it across the road so that his son could board from a cleared sidewalk. That maneuver left the truck facing oncoming traffic on the wrong side of the road.

{¶ 3}   Deputy Craig Crooks, a sheriff's deputy with more than 24 years of service, was returning to the post, having been told that a man named Aaron had requested an escort for a child exchange and would be driving a box truck. Seeing a box truck parked against traffic with a man at the wheel, Crooks pulled his cruiser alongside and asked whether the driver was Aaron. Lynch, who was not Aaron, did not lower his window and appeared to be shouting. Crooks left the cruiser, approached the driver's door, and asked again. Lynch answered with profanity, as he did when Crooks asked whether Lynch had called for the escort. Crooks then asked to see Lynch's driver's license, and Lynch refused.

{¶ 4}   Deputy Crooks decided to conduct a traffic stop for the parking violation and moved his cruiser behind the truck, radioing a sergeant for backup. Lynch got out of the truck, contrary to the deputy's instruction to remain inside, and walked toward its rear while yelling and raising his hands. Crooks told Lynch, "well, now this is a traffic stop, you're parked illegally," and directed him to produce his license. Lynch replied, "I'm not giving you shit." Crooks warned that Lynch would produce his license or go to jail, then told Lynch he was under arrest. Lynch answered, "I'm not under arrest." Crooks testified that he announced the arrest was for obstructing official business.

{¶ 5}   What followed was captured on a fixed camera outside the post and

admitted at trial. As Crooks moved to take hold of Lynch, Lynch turned back toward the truck and pulled away. Concerned that Lynch might flee or reach for a weapon, Crooks took him to the snow-covered ground. Two other officers arrived. Lynch drew his arms beneath his body, and the officers worked to free them before handcuffing him and placing him in a cruiser. The accounts of this struggle diverge. Lynch testified that he had turned toward the truck to retrieve his license from the console and that his face was pressed into the snow so that he could not produce his hands. Crooks testified that Lynch never said he was retrieving his license, that the entire exchange before the arrest lasted only seconds, and that he had asked Lynch only for his license, never for his name, date of birth, or Social Security number.

{¶ 6} The State charged Lynch with resisting arrest and obstructing official business, both second-degree misdemeanors, and cited him for the parking violation. Lynch demanded a jury trial. Before trial, the State dismissed the obstruction charge, and the case proceeded on resisting arrest alone. The State's theory was that Lynch had resisted a lawful arrest for the parking violation, a minor misdemeanor that became arrestable, the State maintained, once Lynch refused to offer satisfactory evidence of his identity. The trial court instructed the jury that a lawful arrest required proof that "the offense for which the arrest was being made was one for which the defendant could be arrested," and that the parking violation became such an offense when Lynch "failed to offer satisfactory evidence of his identity."

{¶ 7} Lynch sought to tell the jury that Deputy Crooks had arrested him for obstruction rather than the parking violation, and that no reasonable officer could have believed his refusal to produce a license amounted to obstruction. The testimony that Crooks named obstruction as the basis for the arrest was admitted, over the State's objection. But when defense counsel asked the jurors in closing whether "a reasonable

officer in that situation [would] believe that he could arrest Mr. Lynch for obstruction of official business," the court sustained the State's objection and instructed the jury to disregard the point, explaining that the State alone decides what charges to bring and that the only charge before the jury was resisting arrest.

{¶ 8} The jury found Lynch guilty. The court sentenced him to 90 days in jail with 60 suspended, 30 days of work release, three years of community control, and a fine and costs.

{¶ 9} Lynch appealed.

## II. Analysis

{¶ 10} Lynch presents two assignments of error. The first contends that the trial court unconstitutionally restricted his closing argument. The second contends that the State's evidence was insufficient to convict him of resisting arrest. Both assignments ultimately turn on the same legal question, namely whether the lawfulness of an arrest is determined by the offense the arresting officer announces or by the facts the officer objectively knows.

## A. The Restriction of Closing Argument

{¶ 11} The first assignment of error alleges:

THE TRIAL COURT ERRED BY RESTRICTING LYNCH'S ARGUMENT IN THE CASE.

{¶ 12} Lynch contends in the first assignment of error that the trial court abused its discretion, and violated his rights to the assistance of counsel and to present a defense, when it prevented his counsel from arguing to the jury that Deputy Crooks arrested him for obstructing official business and that no reasonable officer could have thought that offense justified the arrest.

## 1. Standard of Review

{¶ 13} "The assessment of whether the permissible bounds of closing argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. Such determination will not be reversed on appeal absent an abuse of discretion." *Pang v. Minch*, 53 Ohio St.3d 186 (1990), paragraph three of the syllabus; *State v. Tatum*, 2014-Ohio-386, ¶ 13 (8th Dist.). Because Lynch frames the restriction as a violation of his rights to counsel, to present a defense, and to hold the State to its burden of proof, our review of the trial court's discretion must account for those constitutional rights. A discretionary ruling that denies a defendant the ability to argue a legally valid theory of the case, grounded in the evidence, is unreasonable.

## 2. The Governing Principles

{¶ 14} The Sixth Amendment right to counsel encompasses the right "to make a closing summation to the jury." *Herring v. New York*, 422 U.S. 853, 858 (1975). Closing argument "serves to sharpen and clarify the issues for resolution by the trier of fact," and for the defense it is "the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt." *Id*. at 862. The U.S. Constitution likewise affords a defendant "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984). But these rights are not unlimited. A defendant's interest in presenting his defense "'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Rock v. Arkansas*, 483 U.S. 44, 55 (1987), quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973). A trial court has the authority to limit arguments that "stray unduly from the mark." *Herring* at 862.

{¶ 15} A trial court abuses its discretion when it forbids counsel from arguing a reasonable inference, grounded in the evidence, that supports a legally valid theory of

defense. That was the problem in the cases Lynch cites. In *State v. Tatum*, the trial court barred counsel from arguing that the claimed robbery was a drug deal gone bad, an inference the victim's own cross-examination admissions made reasonable. *Tatum* at ¶ 26-30. It was likewise the problem in *Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 1999), where counsel was prevented from arguing that the prosecution had failed to prove an element of the charged offense, and in *United States v. Miguel*, 338 F.3d 995, 1000-1003 (9th Cir. 2003), where counsel was forbidden from arguing that someone else fired the fatal shot. In each case the restricted argument asked the jury to do exactly what juries exist to do, which is to draw factual inferences bearing on the elements of the charged offense.

{¶ 16} But no right attaches to an argument that invites the jury to apply an incorrect legal standard. A defendant is entitled to argue his theory of the case "'provided that it is supported by law and has some foundation in the evidence.'" *Conde* at 739, quoting *United States v. Mason*, 902 F.2d 1434, 1438 (9th Cir. 1990) ("A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence."). Both conditions must be true.

### 3. What Makes an Arrest "Lawful"

{¶ 17} The dispute in this case is not about the rule governing closing argument but about the law underlying the restricted argument itself. Lynch sought to argue that obstructing official business was "the offense for which the arrest was being made," that a refusal to produce a driver's license is not obstructing under our decision in *Middletown v. Hollon*, 2004-Ohio-1502 (12th Dist.), and that his arrest was therefore unlawful. The trial court sustained the State's objection when counsel asked the jury whether "a reasonable officer in that situation [would] believe that he could arrest Mr. Lynch for

obstruction of official business." Whether that restriction was an abuse of discretion depends on whether the announced offense controls the lawfulness of the arrest. It does not.

{¶ 18} The U.S. Supreme Court in *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004), held that a warrantless arrest is lawful when the officer has probable cause to believe that an offense has been or is being committed. The inquiry is objective. "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause," and the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck* at 153. The Supreme Court expressly rejected the rule that the offense establishing probable cause must be "closely related" to the offense the officer identifies at the time of arrest, observing that such a rule would make the constitutionality of an arrest "'vary from place to place and from time to time'" depending on what the officer happened to say. *Id*. at 153-154, quoting *Whren v. United States*, 517 U.S. 806, 815 (1996). "Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest." *Id*. at 155.

{¶ 19} We said much the same in *Hollon*, the case on which Lynch principally relies. The defendant in *Hollon*, like Lynch, was told he was being arrested for obstructing official business after he refused to provide identification. We reversed his obstructing conviction because the refusal to provide identification was not the affirmative act the offense requires. *Hollon* at ¶ 34. Yet we affirmed his resisting-arrest conviction. The reversal of the obstructing conviction "does not mandate a finding that [the officer]'s arrest of appellant for obstructing official business was unlawful," both because probable cause demands less than proof beyond a reasonable doubt and because the arrest "would have been lawful if, at the time of the arrest, [the officer] had probable cause to believe

appellant committed the offense of 'animals running at large,' provided that offense was an arrestable offense." *Id.* at ¶ 43. Because the defendant would "not offer satisfactory evidence of his identity," the exception in R.C. 2935.26(A)(2) applied, the minor misdemeanor became arrestable, and the arrest was lawful notwithstanding the offense the officer announced. *Id*. at ¶ 47-49. *See also State v. Mitchell*, 2011-Ohio-2465, ¶ 36 (12th Dist.) (stating that an uncharged speeding violation "would have provided an alternate basis for a 'lawful' arrest"). Other Ohio courts have applied *Devenpeck* to the lawful-arrest element of resisting arrest in the same way. *See, e.g., State v. Walker*, 2022-Ohio-3849, ¶ 21, 27-28 (2d Dist.) (stating that "'the probable cause inquiry does not focus on offenses that officers subjectively contemplate at the time of arrest, nor is the inquiry limited to offenses with which a criminal defendant is actually charged'"), quoting *Gessner v. Schroeder*, 2007-Ohio-570, ¶ 37 (2d Dist.).

{¶ 20} Lynch responds that the jury instructions themselves required the State to prove that "the offense for which the arrest was being made was one for which the defendant could be arrested." That language, derived from *Hollon*, 2004-Ohio-1502, at ¶ 46 (12th Dist.), addresses arrestability. It ensures that when probable cause rests on a minor misdemeanor, the State must also establish that the citation-only rule of R.C. 2935.26(A) does not apply. As *Hollon* itself shows, the phrase does not tie lawfulness to the offense the officer speaks aloud, because the defendant's arrest was sustained on an offense other than the one the officer announced.

### 4. The Restriction Was Within the Trial Court's Discretion

{¶ 21} The trial court did not prevent Lynch from placing the deputy's statement to Lynch before the jury. To the contrary, it overruled the State's objection when defense counsel elicited the deputy's concession that he told Lynch he was under arrest for obstructing official business. Nor did the court prevent counsel from arguing the point as

impeachment. Counsel told the jury that Lynch "was told that he was under arrest for obstruction," that the State "should probably be consistent" about the reason for an arrest, and that the State had instead found "another reason to justify arresting Mr. Lynch." The inconsistency between the deputy's stated basis and the State's trial theory was before the jury as a matter bearing on the deputy's credibility. What the court restricted was counsel's invitation to the jury to decide whether an arrest for obstructing official business would have been lawful.

{¶ 22} That restricted argument is not a defense supported by law. Under *Devenpeck* and *Hollon*, as well as *Walker*, the lawfulness of Lynch's arrest did not depend on whether obstructing official business was a valid basis for arrest. Asking the jury to find him not guilty because "a reasonable officer in that situation" could not "arrest Mr. Lynch for obstruction of official business" was asking the jury to resolve a legally immaterial question and to apply a standard the law does not recognize. A trial court does not abuse its discretion by confining closing argument to the law that governs the case. This is what distinguishes *Tatum*, *Conde*, and *Miguel*, the cases Lynch cites in support of his argument. In each of those cases the restricted argument urged a permissible factual inference in support of a legally sound theory. Here, the restricted argument urged a legally unsound theory.

{¶ 23} The first assignment of error is overruled.

### B. Sufficiency of the Evidence

{¶ 24} The second assignment of error alleges:

> THE STATE ELICITED INSUFFICIENT EVIDENCE TO CONVICT LYNCH OF M2 RESISTING ARREST.

{¶ 25} Lynch does not dispute that his physical conduct (pulling away from the deputy, turning back toward his truck after being told he was under arrest, and pinning

his arms beneath his body as three officers attempted to handcuff him) satisfied the resistance element. His arguments in the second assignment of error all target the arrest itself.

### 1. Standard of Review

{¶ 26} When reviewing the sufficiency of the evidence to sustain a verdict, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Sufficiency review does not permit us to weigh credibility.

{¶ 27} Lynch was convicted under R.C. 2921.33(A), which provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." A lawful arrest is an essential element of the offense. *Hollon*, 2004-Ohio-1502, at ¶ 42 (12th Dist.). In assessing lawfulness, we "'need not find that the elements of the underlying charge have been proven [beyond a reasonable doubt], but there must exist a "reasonable basis" for the arrest.'" *Mitchell*, 2011-Ohio-2465, at ¶ 33 (12th Dist.), quoting *State v. Thompson*, 116 Ohio App.3d 740, 743 (1st Dist. 1996). An arrest is lawful if the surrounding circumstances would give a reasonable police officer cause to believe that an offense has been or is being committed and, where the offense is a minor misdemeanor, if one of the exceptions to the citation-only rule of R.C. 2935.26(A) applies. *Hollon* at ¶ 46-47.

### 2. The "Offense for Which the Arrest Was Being Made" and the Reasonable-Belief Arguments

{¶ 28} Lynch's first two arguments echo the arguments in his first assignment of error. He contends that the offense for which the arrest was made was obstructing official business, that the State never proved obstructing was an arrestable offense, and that no

reasonable officer could have believed that a refusal to produce a license constituted obstructing. On the last point he is right about the law of obstructing. We stated in *Hollon* that "'one cannot be guilty of obstructing official business by doing nothing.'" *Hollon* at ¶ 30, quoting *Hamilton v. Hamm*, 33 Ohio App.3d 175, 176 (12th Dist. 1986). And the Eighth District has collected several cases holding that a driver's refusal to identify himself or produce his license during a traffic stop is not the affirmative act the offense requires. *Bedford Hts. v. Davis*, 2024-Ohio-1281, ¶ 8-11 (8th Dist.).

{¶ 29} But that body of law answers a question this case does not present. For the reasons explained in resolving the first assignment of error, the lawfulness of an arrest is an objective matter, and the deputy's announcement does not confine the inquiry. *Devenpeck*, 543 U.S. at 153; *Hollon* at ¶ 43; *Walker*, 2022-Ohio-3849, at ¶ 28 (2d Dist.). Viewed in the light most favorable to the State, the evidence here established probable cause for at least one arrestable offense. Lynch himself concedes that his box truck was parked on the wrong side of the street facing oncoming traffic. The deputy thus had probable cause to believe a parking violation had occurred. That offense, a minor misdemeanor, was ordinarily subject only to citation under R.C. 2935.26(A). But the citation-only statute's second exception permits arrest where "[t]he offender cannot or will not offer satisfactory evidence of the offender's identity." R.C. 2935.26(A)(2). The deputy testified that after expressly telling Lynch this was a traffic stop, he twice demanded Lynch's driver's license and was twice refused, the second time with the words "I'm not giving you shit." On that evidence, a rational juror could find that Lynch "w[ould] not offer satisfactory evidence of [his] identity," making the parking violation an offense for which he could be arrested. That is identical to *Hollon*, where the announced basis was obstructing but the arrest was lawful because the defendant's refusal to identify himself rendered a minor misdemeanor arrestable under R.C. 2935.26(A)(2). *Hollon*, 2004-Ohio-

- 11 -

1502, at ¶ 47-49 (12th Dist.).

{¶ 30} There is a second basis for arrest as well. In *State v. Mitchell*, we held that a driver's refusal to obey an officer's order to produce his license during a valid traffic stop gave the officer cause to believe the driver had committed failure to comply with the order of a police officer under R.C. 2921.331(A) and that the arrest was therefore lawful for purposes of resisting arrest. *Mitchell*, 2011-Ohio-2465, at ¶ 33-35 (12th Dist.). The evidence here mirrors *Mitchell*.

{¶ 31} The facts known to Deputy Crooks, viewed objectively and in the State's favor, supplied a reasonable basis for the arrest.

### 3. Satisfactory Evidence of Identity

{¶ 32} Lynch also presents an argument that raises a question of statutory interpretation. He contends that a driver's license is not "evidence of . . . identity" within the meaning of R.C. 2935.26(A)(2), citing R.C. 2921.29(A), the failure-to-disclose statute, which imposes a duty to disclose only "the person's name, address, or date of birth." Because the deputy demanded a license and never asked for his name, date of birth, or Social Security number, Lynch argues, the identity exception was never triggered.

{¶ 33} The argument reads R.C. 2935.26(A)(2) backwards. The statute does not prescribe a list of questions an officer must ask. Rather, it describes a condition of the offender, namely that he "cannot or will not offer satisfactory evidence of the offender's identity." The verb is "offer," and the burden of the offering rests on the offender. An offender who responds to a request for identification by declaring "I'm not giving you a fucking thing" and "I'm not giving you shit" has not offered anything. Nothing in the statute required Deputy Crooks to work through the alternative identifiers one by one after Lynch categorically refused to identify himself. Indeed, in *Hollon* we applied the exception to a defendant who had offered something, an Eagles Club membership card, and then

refused to provide anything more. *Hollon*, 2004-Ohio-1502, at ¶ 4, 48 (12th Dist.). Lynch offered nothing at all.

{¶ 34} Nor does the failure-to-disclose statute, R.C. 2921.29, supply the definition Lynch proposes. That statute creates a distinct criminal offense with a distinct function. It obligates a person in a public place to disclose minimal identifying information upon reasonable suspicion, and its division (C) expressly disclaims any authorization to arrest for refusing to provide information beyond name, address, or date of birth. It says nothing about what qualifies as "satisfactory evidence of . . . identity" under the citation-only statute, R.C. 2935.26, which addresses the situation in which an officer who already has grounds to arrest for a minor misdemeanor must issue a citation instead.

{¶ 35} A citation must contain "[t]he name and address of the offender." R.C. 2935.26(B)(1). A driver's license, which bears the holder's name, address, date of birth, and photograph, is the usual document by which a driver at a traffic stop establishes identity for that purpose. It would be a strange statute that treated a demand for the single most reliable form of identification a motorist carries as insufficient to trigger the exception, while a demand for an oral recitation of the same information would suffice. Viewed most favorably to the State, the evidence permitted a rational juror to find that Lynch would not offer satisfactory evidence of his identity.

{¶ 36} Lynch's related contention, that he was in fact complying because he was walking toward his truck to retrieve the license from the console when he was seized, is an argument about how to construe his movement. The deputy testified that Lynch never said he was going to get his license, that the only statement Lynch made about the license was "I'm not giving you shit," and that the deputy would not permit a non-compliant motorist to reenter his vehicle during an arrest for reasons of officer safety. A rational juror could find on this evidence that Lynch's movement toward the truck was not belated

compliance but flight from the arrest or, at least, not an offer of identification. That the jury might have drawn an inference favorable to Lynch does not render the evidence insufficient.

**4. Understanding of the Arrest**

{¶ 37} Lynch's remaining argument is that the State failed to prove he understood he was being arrested. He points to his own statement, "I'm not under arrest," as proof of his subjective belief and argues that he could not have understood himself to be under arrest for a parking violation or an affirmative-act-free obstruction.

{¶ 38} The argument has little merit. The deputy warned Lynch, "[Y]ou're going to give me your driver's license or you're going to go to jail," and then told him he was under arrest. Lynch's immediate response, "I'm not under arrest," is itself evidence that the announcement was heard and understood. The statement, read in the light most favorable to the State, expresses a refusal to submit or a dispute about the arrest's justification but not confusion about whether an arrest was occurring. And what followed confirms this. As the officers struggled to handcuff him, Lynch was repeatedly told he was under arrest and repeatedly told to put his hands behind his back, and he continued to insist that he was not under arrest and had done nothing while pulling his arms beneath his chest. The understanding element concerns the fact of the arrest, not the arrestee's agreement with its legal basis. A rational trier of fact could readily find that Lynch understood he was being placed under arrest at the moment he resisted.

{¶ 39} Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found each essential element of resisting arrest proven beyond a reasonable doubt, including that the arrest was lawful, that Lynch understood it, and that he recklessly or by force resisted it.

{¶ 40} The second assignment of error is overruled.

### III. Conclusion

{¶ 41} We have overruled both assignments of error. The trial court's judgment is affirmed.

PIPER, P.J., and SIEBERT, J., concur.

---

# J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Municipal Court for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robin N. Piper, Presiding Judge*

*/s/ Mike Powell, Judge*

*/s/ Melena S. Siebert, Judge*